## No. 16,624.

MALOY ET AL. *v.* GRIFFITH ET AL.
(240 P. [2d] 923)

Decided January 21, 1952.   Rehearing denied February 11, 1952.

Mr. F. RICHARD HITE, for plaintiffs in error.

Messrs. ROGERS & ROGERS, Mr. W. RUSSEL EDDY, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

BERNARD F. MALOY, James J. Carter and Patricia H. Maloy, individually and doing business as Maloy, Carter and Maloy, instituted an action based on false and fraudulent representations respecting a certain lease, claiming that by reason thereof they had been damaged in the sum of $5,000.00 actual and $10,000.00 exemplary damages, for which they sought judgment against Donald I. and Gladys May Griffith, the owners of the premises.

The Griffiths answered, denying false and fraudulent representations as alleged by plaintiffs and also filed a cross complaint in which they sought damages in the sum of $3,839.99 for repairs and alterations necessarily made by them on the premises, and $3,000.00 due as rental for the unexpired portion of the lease. Upon trial, the jury found against plaintiffs on their complaint and in favor of defendants in the sum of $1,311.71 on their cross complaint, and judgment was entered accordingly. Plaintiffs bring the case here by writ of error for review.

Reference will be made to the parties herein as plaintiffs and defendants as they were designated in the district court, or as lessors or lessees as referred to in the written lease.

The record consists of 1379 folios, replete with incompetent, irrelevant and immaterial evidence, making a summarization thereof difficult. However, we consider the following statement sufficient in our consideration of the cause: Defendants were the owners of the premises located at 1335 Bannock St., which was zoned for other than business purposes, and plaintiffs were interested in leasing them for their law offices. On January 6, 1949, plaintiffs and defendants entered into a written lease for a term of one year beginning January 15, 1949, at a monthly rental of $300.00, the first and last months'

rent being paid on the execution of the lease. It was provided in the lease that the premises were to be used as "Lawyers Offices and business purposes only." It also was provided that plaintiffs would pay the cost of floor covering, not to exceed $600.00, exclusive of labor, and at the expiration of the term the lessors would repay the lessees the cost of the floor covering less certain deductions for depreciation. Plaintiffs expended $650.00 in purchasing the floor covering. Possession of the premises was delivered to plaintiffs on January 15, 1949, and surrender thereof was accepted by defendants on February 15, 1949, when it was discovered by plaintiffs that the premises were zoned for purposes other than business and a use for business purposes would be unlawful.

Plaintiffs base their action, as we have said, on false and fraudulent representations made by defendants to them with reference to the use which might be made of the premises, it being plaintiffs' contention that defendants had definitely assured them that a permit had been secured under which the premises could be occupied by them as law offices while it is the position of defendants that at or before the signing of the lease they had apprised plaintiffs of the fact that the premises were zoned for purposes other than business, and plaintiffs had then assured them that they were in position to secure an occupancy change so as to use the premises for their purposes. When it was learned that the premises could not be used for business purposes, then it was that the lease was surrendered and the premises vacated. In addition to the rental which plaintiffs paid upon the execution of the lease and the sum of $650.00 for linoleum floor covering, they incurred expenses in connection with announcement cards, venetian blinds, telephone and other incidentals.

Defendants offered evidence in support of their cross complaint to establish the sums which they were obliged to expend in "readying" the building for their own occupancy. They testified that in making alterations and

changes necessary for their occupancy of the premises after plaintiffs had surrendered the possession thereof, the sum of $1,539.50 was necessarily expended and offered an exhibit evidencing part thereof. One item of expenditure made by defendants after the surrender of possession by plaintiffs, and after securing a building permit so to do, was "to build a stairway so that the building would be rated as an office building" no amount thereof being specified. Defendants offered an exhibit covering many of the expenditures for which they demanded judgment, and, upon objection thereto, the court ruled: "The Court will hear testimony from Mr. Boxer on the labor for the installation of the bathtub and the kitchen sink only. The Court will hear testimony from the B & L Electrical Company on the work they had to do after the plug was pulled to determine how much that was as an element of damage allegedly caused by the actions of the plaintiffs. These things, after the testimony, then, will be ruled as *the only element of damage*, and all of the exhibits tendered as the Defendants' Exhibit 11, the objection thereto is sustained." (Italics ours.)

Thereupon the court orally instructed the jury as follows:

"Before we go any farther, ladies and gentlemen of the jury, when we suspended for the week end you may recall that just prior to excusing you the Court was asked to admit into evidence Defendants' Exhibit 11, which consisted of certain bills that Mr. Griffith had testified to. I stated I would take the matter up in chambers and I would rule on that. The Court ruled that Exhibit 11 as constituted and offered into the Court in evidence would not be admitted. In other words, the objection to the bills was sustained. *So the Court is instructing you to disregard the amounts testified to by Mr. Griffith,* and that certain of these bills may be gone into by bringing in the plumber, and his testimony, whatever is received by the Court, will be pertinent.

"You are instructed to disregard any testimony on the electrical bills. There was some testimony about $1500 on a stairway and any other bill on 1329 Bannock the Court ruled were immaterial, and you are instructed to disregard that testimony. As the bathtubs and sinks are capital expenditures and will be used for fifteen or twenty years, that is not a proper element of damage, and you are instructed to disregard that testimony."

Under the court's ruling, to which no objection whatever was made, the only recoverable item on defendants' cross complaint would be the amount paid the plumber, and, in connection with his testimony, the court ruled that certain of the exhibits would be admitted "with the understanding that only the items set forth as to labor are material." The items as to labor appearing on these exhibits and allowable under the court's ruling approximated $100.00. Defendants also sought a judgment for $3,000.00 alleged to be the balance due them as rent under the terms of the lease, and with reference thereto the court ruled that defendants were not entitled to this item "for the reason that it is the opinion of the Court that the actions of the defendants in moving into the premises and occupying the same was tantamount to an acceptance of a forfeiture, and their change in position precludes them now from asking for rental on the premises."

Mr. Griffith, one of the defendants, testified that on the surrender of the premises by plaintiffs he made an inspection thereof and that there was no damage to the premises and, so far as the building was concerned, everything was in good order.

Plaintiffs filed their motion for a new trial, basing the same upon the following grounds:

"1. That the jury awarded the defendants an excessive amount of damages in their verdict. That the jury returned their verdict in favor of the defendants and assessed their damages in the sum of $1,311.91 which is wholly contrary to the evidence.

"2. That by mistake or inadvertance the jury was permitted to take with them into the jury room a sheaf of bills which was marked for identification as Defendant's Exhibit # 11, that said exhibit was not evidence as the same was not received into evidence by the court when offered. That the plaintiffs were prevented from having a fair trial by reason of the fact that the jury considered the contents of said exhibit, the same having been previously excluded from evidence."

The court, in overruling plaintiffs' motion for a new trial, said, inter alia:

"The Court has given careful consideration and attention to the contentions of the plaintiffs and has studied the memorandum briefs of both the parties, and has come to the conclusion that although the verdict may be in excess of the specific items of damage concretely presented by the defendants in round dollars and cents, the verdict is not so excessive as to be tantamount to a denial to the plaintiffs of substantial justice. Some of the items of damage including the inconvenience were speculative, but there appears to be in the record ample evidence to support the amount of the verdict.

"It is the considered opinion of the Court that the issues involved were determined by the jury on evidence properly before them and on instructions carefully submitted, and that to grant a new trial on those issues would be more grave error than any the Court might have committed in the trial."

The specifications of points presented here are nine in number and present alleged errors not specifically set forth in the motion for a new trial. Rule 59 (C) (e), R.C.P. Colo. The first ground upon which plaintiffs sought a new trial is based upon alleged excessive damages. The second ground is based upon a mistake or inadvertence whereby the jury was permitted to have access to an exhibit which had been excluded from consideration. This was an irregularity in the proceedings, and under the provisions of Rule 59 (C) (a) (1), R.C.P.

Colo., the proper method of presenting it in a motion for a new trial is to support and file an affidavit with the motion.

■ The verdict and judgment were in favor of defendants and against the plaintiffs in the sum of $1,-311.71. There is not a scintilla of evidence in the record to support either the verdict or judgment, and this alone justifies a reversal. *Rocky Mountain Fuel Company v. Belk*, 92 Colo. 404, 21 P. (2d) 186; *Lynch v. Kuhlmann Investment Co.*, 93 Colo. 274, 25 P. (2d) 744.

■ ■ Under Rule 111 (f), R.C.P. Colo., while counsel are confined to the points properly specified, "the Court may in its discretion notice any error appearing of record," and in the instant case we shall avail ourselves of this rule. Juries are sworn to return verdicts, according to the law and the evidence. It is universally held that the law in every case, no matter in what form it may be presented, is a matter for the court's determination, and we hold that it is the duty of the court to declare the law for it is the duty of the jury to render its verdict based upon the law and the evidence. In Colorado we have held that it is the duty of the trial court, on its own motion, in the absence of a request therefor, to instruct the jury as to the element of damages, the basis on which the assessment thereof shall be made, and within what limits the damages may be estimated. *Mustang Reservoir, Canal and Land Company v. Hissman*, 49 Colo. 308, 112 Pac. 800; *Colorado Springs Rapid Transit Railway Co. v. Albrecht*, 22 Colo. App. 201, 123 Pac. 957; *Creighton v. Campbell*, 27 Colo. App. 120, 149 Pac. 448; *Northern Colorado Irrigation Company v. Reuter*, 67 Colo. 483, 186 Pac. 286; *Sowder v. Inhelder*, 119 Colo. 196, 201 P. (2d) 533, and in this announcement we are aware of our decision in *Jackson v. Trainor*, 106 Colo. 549, 104 P. (2d) 606.

There was, as we have said, no objection to any instruction given by the court nor were any instructions tendered by plaintiff. Ordinarily we would not exercise

the discretion given us under our Rule 111 (f), supra, but here no measure of damages whatever was given the jury upon which a verdict might have been based in plaintiffs' favor, and none whatever upon which a verdict might be based in defendants' favor. While it is not necessary here to base our reversal on the failure of the court to properly instruct the jury, nevertheless we believe it our duty to call to the trial court's attention the necessity for such an instruction.

We notice error in the failure of the court to give an instruction on the measure of damages because it affirmatively appears here that plaintiffs had expended more than $1,250.00 for possession of the premises without occupancy thereof, for a period of one month, and to allow a verdict for $1,311.71 to stand, under the evidence in the case, would amount to an absolute travesty and a miscarriage of justice, especially in view of the fact that the court, by its rulings, had limited defendants' damages to a sum equal to the amount which they had expended for labor in replacing some of the fixtures in the premises, the total amount of such expenditures, as revealed from the record, being approximately in the sum of $100.00.

The judgment is reversed.