No. 20718.

CHARLES H. KELLOGG, ET AL. *v.* PIZZA OVEN, INC.

(402 P.2d 633)

Decided May 24, 1965. Rehearing denied June 21, 1965.

YEGGE, HALL and SHULENBURG, for plaintiffs in error.

DONALD A. KLENE, WILLIAM J. CASKINS, JR., for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THIS writ of error arises out of two actions consolidated for trial in the Denver District Court.

We will refer to plaintiffs in error as the Architects and to the defendant in error as Pizza.

Pizza in one action sued the Architects, alleging that they failed to perform properly architectural services in designing and supervising the construction of a restaurant building to be occupied by Pizza. It was alleged that the cost of the building was not to exceed $62,000.00, but, because of the negligence of the Architects, it cost approximately $100,000.00, with the resultant damage to Pizza of $40,000.00. The companion action involved a mechanic's lien foreclosure in which Pizza, the Architects and others were the defendants and in which the Architects filed a cross claim against Pizza for $2,761.80 due for services rendered.

Trial was to a jury, and the verdict was returned in favor of Pizza and against the Architects in the amount of $21,489.00. A verdict in favor of the Architects for $930.00 as the balance of their fee was also returned. Motions for new trial and for judgment notwithstanding the verdict were filed and denied.

In their writ of error the Architects assert error as follows:

1. That the evidence fails to support the verdict as no negligence was shown.

2. That the damages awarded are grossly excessive.

3. That the court failed to instruct the jury on the measure of damages.

4. That the verdicts of the jury were inconsistent in that damages were awarded to Pizza while at the same time the Architects were determined to have earned their fee and given a judgment accordingly.

Addressing ourselves to the first point in the summary of argument, we find that although the evidence was in sharp conflict, it was ample to support the verdict of the jury. The Architects knew that Pizza was not to be the owner of the building. Pizza had negotiated with the owner of the land to build the restaurant building and lease it to Pizza. The owner-lessor put a

298

ceiling of $60,000.00 cost on the construction. The agreement between the lessor and Pizza was that if the building cost more, Pizza would be required to pay the overage.

The testimony on custom in the architect profession was that budgetary limitations are proper to impose upon an architect; that an architect must understand, in general, what the building will cost and that when he has all of the information he can estimate the construction cost. It was agreed that a 10% variation is within the norm. It was not disputed that by custom when it is discovered that a building is exceeding the cost limitations it is incumbent upon the architect to tell this fact to the one who is employing him.

▮ There was ample testimony to establish that after construction started the Architects made no attempt to recheck their original estimate by using any of the recognized cost breakdown systems; that when they were requested to supply a detailed cost breakdown to the contractor they utilized former erroneous estimates and made no effort to recalculate their figures. There was testimony that if their figures had been rechecked they would have discovered the almost 40% excess in costs, and certain changes could have been made to meet the budgetary limitations. The Architects failed to check the various bids as they came in and approved them without regard to the total, and the building was more than half way completed before they did so. A check of the bids before the contracts on them were let would have revealed immediately the cost to be in the area of $90,000.00. The general rule upon the duty of an architect is found in 5 Am. Jur. 2d, Architects, § 23, as follows:

"An architect who substantially underestimates, through lack of skill and care, the cost of a proposed structure, which representation is relied upon by the employer in entering in the contract and proceeding with construction, may not only forfeit his right to

compensation, but may become liable to his employer for damages. * * *"

 The jury was instructed that it could find for Pizza and against the Architects if the latter were "negligent in the furnishing of the preliminary estimate and that the plaintiff reasonably relied upon such preliminary estimate; or that the defendants were negligent in their supervision of the construction work; and that such alleged negligence was the proximate cause of damages to the plaintiff." It is our view that this is a correct statement of the law. The jury had before it evidence of careless work on the preliminary estimate, in the supervision of the various subcontracting bids, and was told of some errors in design which required additional costly installations, none of which added to the functional features of the building. As an example, a brick planter had to be built to cover exposure of a foundation wall above grade level.

The assertion that the damages were excessive and that the jury was not properly instructed as to the measure of damages must be discussed together. Counsel for the Architects did not submit an instruction on their theory on the measure of damages. The instruction which the court gave was as follows:

"Instruction No. 9

"You are instructed that if you find from the evidence that the plaintiff is entitled to recover damages under its second claim for relief, based upon the alleged negligence of the defendants, you will assess as the plaintiff's damages an amount which, in your considered best judgment, will reasonably and justly compensate the plaintiff for said alleged negligence. In no event, shall you return a verdict on plaintiff's second claim for relief for more than $32,768.92, the amount prayed for by the plaintiff on said second claim."

 The Architects charge that this does not furnish a specific measure and leaves the jury to speculate on the damages. In support of their contention, the

Architects cite *Mustang Co. v. Hissman,* 49 Colo. 308, 112 Pac. 800, wherein the court quoted the general law as follows:

"The rules by which damages are to be estimated should be laid down by the court, and it is its duty to explain to the jury the basis on which the assessment should be made, the proper elements of the damages involved, and within what limits they may be estimated in the case involved.

"The jury should not be left to determine the amount from conjecture and belief without reference to the legal rules determining the bound and limits of compensation."

In the Mustang case the instruction of the court was that "* * * it would be your duty to assess such damage as may have been proven *in evidence* by the plaintiff." (Emphasis ours) The only proof offered by the plaintiff was the cost of cleaning up land after it had been flooded through the negligence of the defendant, whereas the true measure of damage — the difference between value of the land before the flood and after the flood — was not proven by any testimony. The case turned on an error in an evidentiary matter, and the instruction compounded the same. It is not a guide to the problem in the case at bar.

It is further argued that the court *must* instruct the jury on the measure of damages even though the parties do not object, or, in objecting, do not submit proper instructions. *Maloy v. Griffith,* 125 Colo. 85, 240 P.2d 923; *Colorado v. Morison,* 148 Colo. 79, 365 P.2d 266. In the cases referred to no instructions at all were given on damages; in the case at bar the court did instruct on damages.

Instructions such as were given in this case have been approved in similar cases in other jurisdictions such as Texas and California. It may be gleaned from these cases that if the architect fails to exercise sufficient skill and diligence in the preparation of plans, or

if the plans submitted are defective, he is liable for such damages as are just. See *Capitol Hotel Co. v. Rittenberry,* (Tex. Civ. App.) 41 S.W.2d 697; *Edward Barron Estate Co. v. Woodruff Co.,* 163 Calif. 561, 126 Pac. 351. See also 6 C.J.S., Architects, § 21, wherein a general statement on damages is "* * * what would fairly compensate the owner for the loss sustained; * * *."

■ In this case the court could have been more specific by instructing the jury that the measure of damages is the difference between the estimated costs of the building and the actual cost less the following: 10% of the estimated cost deemed to be the normal variation allowed in cost estimates, and the cost of such items as the evidence showed were caused by substantial alterations in the original plans due to instructions of Pizza. In this case the failure to give such a precise instruction is not prejudicial because the jury used the evidence and the totality of the instructions in arriving at an identical mathematical result. The actual construction was $92,768.00 and the estimated cost submitted by the Architects was $62,000.00, making a difference of $30,768.00. Subtracting from that figure $6,200.00 as 10% of the estimated cost and the sum of $2,079.00 which it is undisputed was overage caused by Pizza, we arrive at a figure of $21,489.00, the exact amount of the jury verdict. It is, therefore, apparent that if there were to be a remand for new trial on this asserted error, even with a more precise instruction, the result, mathematically, would be a similar verdict.

■ The Architects call our attention to cases in which the courts have refused to allow a jury to consider the entire difference between the cost of the building and the estimated costs in forming a basis of damages. But those were actions where the ones seeking damages from the architects were also owners of the building. In such cases the courts have reasoned that even though the building costs exceeded the estimate,

yet to allow the full difference would result in unjust enrichment to the owner because he still had the building. In such cases there was evidence that the increased cost also resulted in increasing the value of the building, or, in other instances, resulted in an increase in rental income by reason of the better building produced. That is not the situation in the case at bar. Although there is $92,000.00 of material and labor incorporated in the building, the owner only paid $60,000.00 for it, and Pizza was the one that had to pay the more than $21,000.00 difference. There was no evidence that the completed building was more efficient, more functional, would produce more business, or more customer revenue.

■ We find no merit in the contention of the Architects that because the jury awarded them $930.00 as a balance of the fee owing to them, the verdict for damages awarded to Pizza was inconsistent. Pizza's claim was not on breach of contract but on negligence. The Architects, on the other hand, sued for services performed. The jury found that although they were negligent in their mathematical computations and in letting subcontracts without checking the bids, they did, in fact perform services during the construction of the building which had value. For that they were entitled to compensation based on the percentage of the estimated cost. They had been paid $2,790.00 on account as the building progressed. The balance due was $930.00, which the jury awarded.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE MOORE concur.